## JENNESS *vs.* BEAN.

Where a negotiable promissory note is indorsed, in pledge, as a collateral secu-
rity for a debt due from the indorser to the indorsee, the general property re-
maining in the indorser ; the indorsee takes it, like a chose in action not ne-
gotiable, subject to all defences to which it would be subject in the hands of
the indorser, at the time when notice is given of the indorsement ; and the
maker may set off a debt, due to himself from the indorser, at that time.

ASSUMPSIT, upon a promissory note of the defendant, dated
July 10, 1827, for $30·00, on demand and interest, payable
to Moore & Sargent, or order, and indorsed to the plaintiff.

The defendant filed the general issue, and gave notice
that he should offer claims against Moore & Sargent, in set-
off.

It appeared in evidence that on the 22d of October, 1827,
Moore & Sargent procured one Henry T. Eaton to sign a
note for them, as surety, and at that time they put into the
hands of Eaton sundry notes, as collateral security, and
among them the note in suit, indorsed in blank.   Eaton was
afterwards obliged to pay the note which he had signed as
surety, and Moore & Sargent are insolvent ; but no settle-
ment appeared to have been made between them and Eaton,
for whose benefit this suit is prosecuted.

Moore & Sargent were indebted to the defendant at the
time he first received notice of the indorsement, which was
in the spring of 1832, in a much larger sum.

There had been mutual dealings between them and the
defendant for several years previous, but it did not distinctly
appear how the account stood at the time the note was de-
livered to Eaton.

The court instructed the jury, that if the note had been
*bona fide* transferred to Eaton, absolutely, he would have
been entitled to recover ; but that having been only pledged
as collateral security, the general property remaining in
Moore & Sargent, and as this pledge was made long after the
note was due and payable, the defendant was entitled to

treat Moore & Sargent as the owners, and to set off his demands against them in discharge of the note.

The jury returned a verdict for the defendant, and the plaintiff moved for a new trial.

*Cilley*, for the plaintiff.

*St. Clair, & Bell*, for the defendant.

PARKER, C. J.   If the property of the note, upon which this action is founded, had been transferred absolutely and *bona fide* to Eaton, when it was indorsed to him, no demand in favor of the maker against the payees could have been filed in set off, notwithstanding the note might have been considered as a discredited note, from the time which had elapsed subsequent to its date.   6 *N. H. Rep.* 469, *Chandler* vs. *Drew.*   The defendant having by his contract made the legal title assignable, and promised to pay any one to whom the note should be duly transferred and indorsed, could not, after such a transfer, be permitted to avoid the obligation of his contract to pay the indorsee, by alleging that another distinct and separate debt was due from the payees to himself, and offering to set off the one against the other.

The case before us, however, does not find a transfer of that character.   The note has not, in fact, been negotiated in the usual course of business, and become absolutely the property of the indorsee.   It is transferred to him, to hold merely as a collateral security for a debt due from the payees to himself.   The indorsement, it is true, transferred the legal title to the indorsee, so that he could institute a suit in his own name, or, as in this instance, in the name of a third person.   And the indorsee is not a mere nominal party, having no interest in the matter.   If no defence exists, and no rights of the maker intervene, the indorsee, as between the indorser and himself, has the right to collect the note and apply the avails to the satisfaction of his claims against the indorser.

But the question still remains, whether the right and title of the indorsee is not subject to a right in the maker, to set up any defence he could make against the payees, had the suit been brought by them, and to set off any demand he had against them at the time when he received notice of the indorsement.

Aside from the insolvency of the payees, which seems to have occurred since the indorsement, we think there is no reason to deny such a right. The general property of the note still remains in the payees. So far as the general property is concerned, they are the real owners of the note, and parties in interest. If the amount is recovered of the defendant it will go to discharge so much of a claim which the indorsee holds against them. If the demand should be lost by the insolvency of the defendant, without any fault of the indorsee, the loss would not be his. If the payees were solvent, it would be wholly immaterial to the indorsee whether the defendant was solvent or insolvent, or whether he recovered judgment or not, except that a loss of cost might fall upon him. He could, in that case, collect his demands against the payees, and by that act terminate all his interest under the indorsement ; and the payees, by a settlement of the demand against them, might put an end to his interest.

It is true that by reason of the insolvency of Moore & Sargent, if Eaton is unable to collect the money he may sustain a loss to that amount ; but we are of opinion that their insolvency cannot change the principle upon which the case is to be decided. It does not change the legal relation in which the parties stand to each other. It neither transfers any new title, nor enlarges any right. The indorsee still holds the note as a security merely. His debt against the indorsers is not discharged, nor their interest in the note ended, by their insolvency. If Eaton sustains a loss, it will be upon his demand against Moore & Sargent, and not a loss of a debt due from the defendant. It will not be a loss of this demand. If the set-off is allowed he will be

unable to appropriate the interest of his debtors in this demand, to the payment of his debt; but this will be because his rights were dependant upon their interest, which is thus discharged and defeated.

If the insolvency made a distinction, a question of difficult solution might arise in some cases; that is, whether the indorser was in fact insolvent, and whether therefore the right of defence existed, or not. If the rights of the indorsee were enlarged by the insolvency, it might not be easy to determine at what time he commenced holding this note exonerated from any defence or set-off.

For these reasons we are of opinion that an indorsement of a note in pledge as a collateral security is not one which is protected as a commercial indorsement for value. The general property remaining in the indorser, the indorsee takes it, like a chose in action not negotiable, subject to all defences to which it would be subject, in the hands of the indorser, at the time when notice is given of the indorsement; and the maker may set off a debt, due to himself from the indorser, at that time.

*Judgment on the verdict.*