## BANK OF WOODSTOCK *vs.* KENT.

The rights of the holder of a negotiable note, taken in the usual course of business, before it was due, are not impaired by his holding collateral security for its payment.

Neither holding a general guaranty, nor receiving a special one for the payment of a note at the time it was negotiated, will take the transaction out of the usual course of business, so as to admit the maker to set up an equitable defence, which would be good as against the original payee.

But it would be otherwise, were the note itself merely collateral security.

ASSUMPSIT by the plaintiffs, as indorsees of a promissory note dated December 17th, 1840, made by the defendant and paya-

ble to the order of A. Haven, agent of the Tyson Furnace Company, in one year from date.

The case was submitted upon a statement of facts. On the 13th day of October, A. D. 1841, the Bank of Woodstock, holding a bond against the Tyson Furnace Co., conditioned to waive protest on all notes discounted by the said bank for the company, and to make good to the bank all notes if not collectable from the makers, discounted for the company the promissory note of the defendant, of the tenor and description set forth in the plaintiff's declaration, and paid therefor the full amount, deducting the usual discount. At the same time Haven, as agent for said company, indorsed said note in blank, and also gave the bank a written guaranty, upon the bottom of said note, that the same should be paid to the order of the plaintiffs' cashier, at the Lancaster Bank, which guaranty was signed by said Haven as agent, and also in his individual capacity. In November, 1841, the note was sent to the Lancaster Bank for collection, and indorsed by the cashier for that purpose. Upon the back of the note are the following indorsements : At the date of said note, $11.16 ; Dec. 22, 1841, $75.00 ; Dec. 17, 1842, $74.88.

If in the opinion of the court the defendant may be permitted to set up an equitable defence to the note, as if in the hands of the original payees, or as if negotiated after its dishonor, then the parties agreed that the case should be discharged and the cause stand for trial by the jury; otherwise judgment to be rendered for the plaintiffs for the balance appearing to be due on the note.

*Bellows,* for the defendant. Has the note been transferred in the usual course of trade ? This is the only question. The Tyson Furnace Company are to make good all paper transferred to the bank by them. The agent guarantied the note. It was not transferred in the usual course, and therefore the defendant may set up any equities which may exist on his part. Paper must be taken on its own credit, in order to be protected. The policy of the law is to protect such only. *Chitty on Bills* 221, *note ;* 10 *Wend.* 85 ; 9 *Wend.* 170 ; 4 *Mass.* 370 ; 11 *N. H. Rep.* 66 ; 20 *Johns.* 637 ; 10 *N. H. Rep.* 266 ; *Ditto*

Bank of Woodstock *v.* Kent.

343. These cases show that equities are not excluded where paper is collateral, or where there is any thing to excite suspicion about the transaction. The bank can rely upon the bond entirely and on the other collateral security, and does not need the protection of the law.

*Duncan,* for the plaintiffs. The note was transferred and the money advanced in the usual course of business. If any thing be protected why not this ? It is immaterial whether the collateral security be by bond or note. The note here is the principal, and the bond is the collateral. We draw different legal inferences from the cases in 4 *Mass.* 370, and 10 *N. H. Rep.* 266, cited by the defendant. Here was a present valuable consideration paid by the plaintiffs. We took this note *bonâ fide.* There was no occasion for suspecting that there was anything wrong about the note. 12 *Pick.* 545 ; 20 *Pick.* 545 ; 4 *Mass.* 45, 370 ; 6 *Mass.* 428 ; 1 *Mass.* 1.

*Bellows,* in reply. A note should be transferred before due, and indorsed by the party holding himself liable. A note indorsed without recourse, is not in the usual course of trade. This note was not taken as money.

PARKER, C. J. The plaintiffs discounted the note, and seem to have taken it in the usual course of their business, before it was due. Their rights are not less because they have collateral security. 10 *N. H. Rep.* 359, 367, *Woodman* vs. *Eastman.* It was not necessary that they should have parted with their money on the credit of this alone, to entitle them to the ordinary rights of indorsees, who have purchased before the note became due. It is sufficient that they became the owners of it.

Were it otherwise, the plaintiffs' rights would depend upon the sufficiency of the security. If the security was worth nothing, they would hold the note exonerated from defences ; and on that principle if it was worth nearly nothing, it would seem that they should hold it nearly exonerated.

If the note itself had been taken as collateral security, it would

be otherwise.   But that would be because the general property in it would not have passed to them.   10 *N. H. Rep.* 266, *Jenness* vs. *Bean*; 11 *N. H. Rep.* 66, *Williams* vs. *Little.*

<div style="text-align:right;">

*Judgment for the plaintiffs.*